[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM ON DEFENDANT'S MOTION TO SET ASIDE THE VERDICT AND ORDER A NEW TRIAL OR DIRECT A JUDGMENT NOT WITHSTANDING THE VERDICT (169)
Pursuant to sections 320 and 321 of the Connecticut Practice Book, the defendants in the above-titled matter have moved that the court set aside the verdict and judgment entered thereon and either order a new trial or direct a verdict in the defendant's favor in accordance with its motion for directed verdict and because the verdict rendered: (1) is internally inconsistent; (2) is contrary to the law; (3) is against the evidence; (4) is excessive. CT Page 9265
The case was tried before this court from June 24 to July 2, 1992. The court reserved decision on the defendant's motion for a directed verdict on June 29, 1992. A jury verdict embodying answers to special interrogatories was returned and accepted by the court on July 2. The defendant moved the court to set aside the verdict or to direct judgment notwithstanding the verdict on July 6, 1992. The plaintiff objected to said motion on July 7, 1992.
The facts and circumstances which gave rise to this lawsuit occurred on or around September 15, 1987 when the plaintiff attempted to change a lightbulb which was contained in a Starlite lighting fixture manufactured by the defendant. In the process of changing the lightbulb, the plaintiff stood on a chair and attempted to twist the glass globe which enclosed the lightbulb out of the fixture. The globe shattered lacerating the plaintiff's right wrist. As a result the plaintiff sustained severe injuries to his right wrist including laceration and severing of numerous major tendons, muscles, arteries, veins and nerves. The plaintiff also had a flareup of pre-existing disease lupus erythematosus resulting from the injuries to his right wrist. Plaintiff's injury required hospitalization and extensive surgery.
In the complaint (Paragraph 11) the plaintiff alleged that the lighting fixture manufactured and sold by the defendant was unreasonably dangerous and defective in that:
(a) The fixture was defectively and negligently designed so that during the ordinary course of use risk of injury to the users was unreasonably great;
(b) Defendant negligently failed to provide adequate warnings and/or instructions regarding the use of the fixture;
(c) Thomas the defendant negligently failed adequately to test the safety of the fixture.
In Paragraph 12 of his complaint the plaintiff alleged that the fixture was unreasonably defective and dangerous and unfit for its intended use as a residential ceiling lighting fixture and did not meet the reasonable expectations of the ordinary user or consumer as to the use and safety of the product because: CT Page 9266
(a) The metal shade obscured the presence of the thumbscrews which held the glass globe in position;
(b) The metal shade was designed to be supported by the glass globe which greatly increased the potential for breaking glass;
(c) The glass globe was defectively manufactured and designed in that the glass could not withstand slight pressure without shattering.
In paragraph 13 the plaintiff alleged that the foregoing defects caused the plaintiff's injuries.
In paragraph 14 the plaintiff alleged that the defendant knew or should have known that the lighting fixture was inherently dangerous to those who use it yet defendant failed adequately to test the product and to modify or correct its defective design and failed to use reasonable and ordinary care in ensuring that the fixture carried adequate warnings and instructions for its installation and used by those users reasonably foreseeable to the defendant. In paragraph 16 of the third amended complaint the plaintiff alleged that the plaintiff within the best of his knowledge and ability used the defendant's product as it was intended to be used without substantial change in the condition in which it was sold by the defendant.
In paragraph 17 the plaintiff stated that he brought this complaint pursuant to Connecticut General Statutes 52-572m, et seq., and Connecticut General Statutes 52-240b.
All of the allegations previously noted were contained in a single count.
During the course of the trial and in his request to charge the plaintiff claimed that the defendant was liable to pay damages for his injuries on two grounds. The first is that the defendant was negligent; and the second is that its product, the light fixture here in question, was unreasonably dangerous and therefore defective. Throughout the trial and in argument and in the plaintiff's request to charge, the plaintiff predicated liability on these two theories of liability which he described as negligence and strict liability. With regard to negligence the plaintiff claimed that the light fixture was designed improperly CT Page 9267 because the metal shade was hung below the screws which held on the glass globe preventing the screws from being seen from viewing angles below and to the side of the glass globe instead of being hung above the screws so that a person could see them inside the shade. Plaintiff also claimed that the light fixture was designed negligently and improperly because the only means of support for the shade was the glass globe itself. Claiming that the presence of the shade caused the globe to shatter upon the application of normal force.
The plaintiff's second theory of liability was described by him as strict liability as part of the law dealing with the responsibility of manufacturers and sellers of product. Plaintiff relied upon the law that a company which manufactures or sells any product in a defective condition unreasonably dangerous to the ultimate user or consumer is subject to liability for the physical harm caused to the ultimate consumer. Plaintiff argued that the issue for the jury to decide was whether the defendant's light fixture because of its design was unreasonably dangerous for its intended use as a light fixture and therefore was a defective product. Plaintiff also predicated liability under strict liability in tort on a failure of the duty to warn; he argued that a failure to warn of known and foreseeable dangers of a product sufficed by itself make a product unreasonably dangerous and defective under the theory of strict liability. Plaintiff claimed that the defendant knew or should have known that the light fixture was dangerous because the shade hid the screws and knew or should have known that someone trying to remove the glass globe to change a blown-out bulb was in danger of being injured because he or she could not see the screws. Plaintiff also argued that the light fixture was dangerous and that the defendant knew or should have known that it was dangerous because the metal shade rested on the glass and knew or should have known that someone trying to remove the glass globe was in danger of being injured because the presence of the shade would cause the glass globe to shatter more readily.
At the conclusion of the evidence the plaintiff prepared interrogatories which the court submitted to the jury. These interrogatories were as follows:
(A) Strict Liability
 1. Did the plaintiff prove by a preponderance of the evidence that the defendant breached CT Page 9268 those duties upon which a claim of strict liability is predicated, on the ground that the light fixture designed and sold by the defendant was unreasonably dangerous and defective because of its design.
 The jury responded to this interrogatory in the negative.
 (2) Did the plaintiff prove by a preponderance of the evidence that the defendant breached those duties upon which the claim of strict liability is predicated on the grounds that the light fixture designed and sold by the defendant was unreasonably dangerous and defective because of the failure of the defendant adequately to warn of the dangerousness of the product. The jury responded to this interrogatory in the negative.
Plaintiff also submitted interrogatories based upon his theory that the defendant had negligently designed the product. The interrogatory was as follows: (1) Did the plaintiff prove by a preponderance of the evidence that the defendant was negligent in the design of the light fixture? The jury gave a positive response to this interrogatory. (2) Did the plaintiff prove by a preponderance of the evidence that the negligence of the defendant was a substantial contributing cause of the injury to the plaintiff's right hand. The jury gave another positive response to this interrogatory.
Defendant argues that in civil cases a verdict must be set aside (1) when the jury takes a position on the evidence that is wholly inconsistent; Fabrizi v. Golub, 134 Conn. 89, 94-95
(1947); O'Brien v. Connecticut Company, 97 Conn. 419, 422 (1922); (2) When a verdict rests on a factual finding contradictory to another finding on the same issue by the trier; Magnan v. Anaconda Industries, Inc., 193 Conn. 558 (1984). It is the thrust of the defendant's argument that the plaintiff failed to prove that the subject product was defective; that the jury found that the defendant's product was neither defective nor unreasonably dangerous either because of its labelling or its design. Interrogatories and verdict form, A.1., A.2. Despite this finding the jury also found that the defendant was negligent in designing CT Page 9269 the product and that the negligence was the cause of the injuries, Interrogatories and Verdict Form B.1., B.2.
The defendant argues that these findings are inherently illogical and inconsistent. After considering the evidence offered at trial, the argument of counsel, the request at charge, and the complaint and the interrogatories, the court has come to the conclusion that the defendant is correct.
The jury could not logically have found that the product was not defective and at the same time found that the defendant's negligence in designing a non-defective, non-dangerous product proximately caused the plaintiff's injuries. This is so because defectiveness is an essential element of a product liability action based on negligence as well as one based on strict tort liability.
 "In order for there to be recovery in any product liability action, it is essential that the plaintiff be able to prove causation and fact. This means, that the injured party must be able to establish that the product was defective, that the defect caused the injury complained of and that the defect can be traced to the defendant. The principal difference in strict liability in tort from negligence liability is that the element of the defendant's negligence is not relevant in strict liability in tort. However, in a negligence claim it is necessary that the plaintiff prove causation or recovery will not follow.
This element of causation is not always easy to prove. As pointed out there are three aspects to causation: (1) defective product; (2) relation of the defect to the injury; and (3) tracing the defect to the defendant. Frumer and Friedman, Products Liability (1989) Sections 3.03[4][e][i], p. 3-506-507.
Under a negligence theory the plaintiff must ordinarily show that the harm was caused by the product and by some defect therein at the time of the manufacture. Substantially the same problem exists with respect to proof of breach of warranty and/or strict liability in tort. Id. Section 2-25[i][a] pp. 2-1234-1235.
The court concludes that the plaintiff has failed to CT Page 9270 prove that this product had a defect in its design under a strict tort liability theory. It therefore follows that a claim for negligent design must necessarily fail. The plaintiff's complaint indicates that a product defect is an essential element of product liability predicated on negligence. Plaintiff's allegations of liability intermingle concepts of negligence and strict tort liability to such an extent that they are in fact indistinguishable. The court finds that it is illogical and inconsistent to conclude that a product is not defective and that no defect in the product caused an injury while simultaneously concluding that the designer of the product did something wrong and caused the same injury.
Because the verdict on the negligence claim is inconsistent with the verdict on the strict liability claims it cannot be sustained and therefore must be set aside and a new trial ordered. It is therefore unnecessary for the court to rule on defendant's arguments (3) that the verdict is against the evidence; or (4) that the verdict is excessive.
Dorsey, J.